IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL CITRUS INTERNATIONAL INCORPORATED, | ) ) ) | |
| Plaintiff | ) ) | No. 04 C 6402 |
| v. | ) ) ) | Hon. Michael T. Mason |
| JEROME REMIEN, THE JEROME REMIEN REVOCABLE TRUST, BURTON URY, and URY CORP. | ) ) ) ) | |
| Defendants | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff General Citrus International Incorporated ("General Citrus") filed this underlying case against Jerome Remien ("Remien"), and against Burton Ury ("Ury") and Ury Corporation ("Ury Corp.") (collectively the "Ury Defendants") seeking sums due under a loan agreement and related guaranties. Presently before this Court is General Citrus' motion to bifurcate and defer quantification of its attorneys' fees until after trial. [194]. The parties appeared for oral arguments on General Citrus' motion on July 29, 2009. After careful consideration of the arguments raised in the parties' briefing [194, 203, 212] and in the oral arguments before this Court, plaintiff's motion is granted in part and denied in part for the reasons set forth below.

**Background Facts**

This dispute arises from General Citrus' sale of certain assets to Avoco International LLC ("AI LLC"), an entity formed by Ury, Remien, and various other non-

parties. In connection with their purchase of General Citrus' assets, AI LLC borrowed money from LaSalle Bank. AI LLC's debt to LaSalle is referred to as the "Senior Indebtedness" or, alternatively, the "LaSalle Notes." AI LLC also financed its purchase of the assets through a term loan from General Citrus (the "General Citrus Note"). The General Citrus Note is subordinate to the LaSalle Notes. Ury guaranteed up to one million dollars of AI LLC's debt to LaSalle under the LaSalle Notes (the "Ury Guaranty"). Remien also guaranteed AI LLC's obligations to LaSalle (the "Remien Guaranty"), as well as AI LLC's obligations under the General Citrus Note (the "Remien Subordinated Guaranty"). The Remien Subordinated Guaranty includes a "Guaranty Limitation" of $500,000. It provides for payment of "expenses, legal and/or otherwise, (including court costs and reasonable attorneys' and paralegals' fees and expenses)" incurred in connection with General Citrus' efforts to enforce the guaranty.

It is undisputed that AI LLC defaulted on its obligations to LaSalle and General Citrus. Through this action, General Citrus seeks $500,000 - the outstanding indebtedness owed by AI LLC and guaranteed by Remien - along with interest, attorneys' fees and expenses. (Compl. at ¶ 15, 33). General Citrus contends that Remien is liable for those amounts pursuant to the Remien Subordinated Guaranty. General Citrus also asserts that the Ury Defendants tortiously interfered with its rights under the Remien Subordinated Guaranty.

On February 26, 2009, this Court granted General Citrus' request for judgment as a matter of law with respect to liability on its claim for breach of contract against Remien. [166]. We also granted General Citrus' request to find that Ury Corp. is Ury's alter ego and that the purported "Assignment" of Ury's guaranty of the Senior

2

Indebtedness from LaSalle Bank to Ury Corp. lacked consideration. Subsequently, we set this case for a bench trial beginning August 24, 2009 [171].

In its present motion, General Citrus asks this Court to bifurcate its claim for attorneys' fees into two phases. Under plaintiff's proposed resolution, this Court would first determine, at trial, if General Citrus can recover its fees and expenses from Remien pursuant to the Remien Subordinated Guaranty and/or from Ury[1] "pursuant to tort principles." If we determine that General Citrus is entitled to attorneys' fees, plaintiff asks that we then order the parties to submit "evidentiary proof, which could probably be conducted on paper, quantifying the recoverable fees." Remien and Ury jointly oppose General Citrus' request to determine the appropriate amount of attorneys' fees, if any, through post-trial briefs[2] submitted pursuant to Local Rule 54.3. [203].

**Legal Standard**

A court may separate claims or issues for trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Bifurcation is proper when: (1) it serves the interest of judicial economy or is done to prevent prejudice to a party; (2) does not unfairly prejudice the nonmoving parties; and (3) does not violate the Seventh Amendment. *See id.; MCI Commc'ns. v. American Tele. & Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983). The party seeking bifurcation bears the burden of demonstrating that judicial economy would be served and that no party would be

---

[1] Consistent with our finding on summary judgment, Ury Corp. and Burton Ury are jointly referred to as "Ury" in the remainder of this Opinion.

[2] Defendants also object to General Citrus' efforts to introduce evidence of its attorneys' fees, including fee summaries, invoices and the testimony of its counsel, Kevin B. Duff, at trial. We reserve ruling on those objections until trial.

prejudiced by separate trials. *William Reber, LLC v. Samsung Elecs. Am. Inc.*, 220 F.R.D. 533, 536 (N.D. Ill. 2004) (vacated in part on alt. grounds, 2004 U.S. Dist. LEXIS 19291 (N.D. Ill. Sept. 24, 2004)). "[T]he decision to bifurcate is made on a case by case basis and rests with the sole discretion of the trial court." *A.L. Hansen Mfg. Co. v. Bauer Prods.*, 2004 U.S. Dist. LEXIS 8935, *6 (N.D. Ill. May 17, 2004) (citing *Housman v. United States Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999)).

**Analysis**

General Citrus argues that bifurcation of liability and damages would further judicial economy because: (1) if plaintiff is not entitled to fees "by deciding that question first, no judicial resources need be spent hearing evidence on the amount of fees;" (2) utilizing the procedures of Local Rule 54.3 in advance of any consideration of attorneys' fees "will narrow and focus the areas of dispute;" (3) presenting the fee dispute to the Court in written submissions, rather than oral testimony, is far more effective; and (4) the "practical difficulties" of litigating the fee award as part of the merits at trial "renders it more efficient to postpone that issue." General Citrus also relies on *A.G. Becker-Kipnis & Co. v. Letterman Commod. Inc.*, 553 F. Supp. 118, 124 (N.D. Ill. 1982), to support the proposition that "the determination of what attorneys' fees and costs [the prevailing party] may be entitled to should be made by the Court after the services have been performed." However, that case held that "the Seventh Amendment does not require that [plaintiff's] claim for costs and attorneys' fees be tried to a jury." *Id.* It did not involve a request for bifurcation, and is distinguishable from the present case.

General Citrus has not shown that bifurcating its claim for attorneys' fees would promote judicial economy. This is a bench trial that is expected to last between five and

4

ten hours. We have already found that Remien is liable for breach of contract, and that his obligations under the Remien Subordinated Guaranty were ripe at least as of February 26, 2009. During the pretrial conference, the parties advised this Court that they dispute the meaning of the "Guaranty Limitation" clause of the Remien Subordinated Guaranty. That issue must be resolved before this Court determines the amount, if any, of attorneys' fees that General Citrus may recover from Remien. As General Citrus recognizes, if we find that Remien's total liability, including attorneys' fees, is subject to a $500,000 Guaranty Limitation or if we find that plaintiff is not entitled to attorneys' fees, we may unnecessarily dedicate judicial resources to hearing evidence regarding the amount of and/or basis for plaintiff's fees and expenses. However, that concern is outweighed by the additional delay and judicial resources that would be expended if this Court was required to conduct a second trial to determine if Ury and/or Remien were responsible for those fees.

Moreover, General Citrus has not shown that its proof of damages is entirely distinct from its proof of liability. To the contrary, General Citrus indicated in oral arguments before this Court that it intends to rely on its counsel's billing records to show that it provided notice to LaSalle Bank – a fact related to Remien's alleged liability. Therefore, there is at least some overlap in the evidence that relates to liability and the evidence that relates to damages.

This Court is also concerned with the potential prejudice to the nonmoving parties. General Citrus seeks approximately $175,000 in attorneys' fees related to services performed from 2004-2009 in connection with its efforts to recover amounts due from AI LLC, and from Remien under the Remien Subordinated Guaranty. General

5

Citrus has not alleged that Remien and Ury are jointly liable for those fees, and the percentage of the fees General Citrus attributes to Remien's conduct or, alternatively, to Ury's conduct is not clear. Defendants argue that precluding any review of General Citrus' fees during trial would "cripple" their defense. Ury contends that "the Ury Defendants are entitled not only to contest the claim in the abstract, but they are entitled to show that a specific portion of attorneys' fees was not proximately caused by Remien's breach or by their conduct." Ury also argues that he should be able to show "that a specific task performed by General Citrus' counsel was not required as a result of Remien's breach or [Ury's] conduct." These arguments are persuasive.

Finally, with the exception of the records revealing counsel's trial preparations, General Citrus has not shown that it will be prejudiced by the denial of its request to bifurcate. During the July 29, 2009 pretrial conference, General Citrus' counsel stated that it would produce "substantially less redacted and perhaps totally unredacted" versions of the records memorializing its attorneys' fees and expenses. Accordingly, General Citrus essentially concedes that it will not be prejudiced by allowing defense counsel to review its time records prior to trial.

To the extent that they have not already done so, General Citrus is to produce "substantially less" redacted billing records memorializing the fees and expenses incurred through February 26, 2009, or any later date stipulated by the parties. Those records must be delivered to defense counsel by 10:00 a.m. on August 10, 2009 and should be labeled with a "PX No." that corresponds with the relevant entry on plaintiff's (amended) list of proposed exhibits. General Citrus should submit a copy of the records to chambers, room 2206, by 5:00 p.m. on August 10, 2009. If, after reviewing the

6

records, defendants require any additional discovery, including the limited deposition of plaintiff's trial counsel, they are to file an appropriate motion by 10:00 a.m.. on August 12, 2009. Unless otherwise ordered, that motion will be heard at 8:45 a.m. on August 13, 2009. The Court will review the records supporting General Citrus' claim for attorneys' fees incurred after February 26, 2009 (or the later date stipulated by the parties), if necessary, following trial.

**Conclusion**

For the reasons set forth above, General Citrus' motion to bifurcate and defer quantification of attorneys' fees is granted in part and denied in part. It is so ordered.

ENTERED:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: August 5, 2009**